UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NGHIEP KE LAM,<br><br>    Plaintiff,<br><br>    v.<br><br>SERGIO ALBARRAN, et al.,<br><br>    Defendants. | Case No. 25-cv-09980-NW<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 3 |

Petitioner-Plaintiff Nghiep Ke Lam has lived in the United States nearly all his life. When he was released from prison nearly ten years ago, the Department of Homeland Security ("DHS") instituted removal proceedings against him that culminated in the issuance of a final removal order to Vietnam. However, because it was unclear if or when Mr. Lam's removal would occur, and because the Government determined that Mr. Lam was not a flight risk or a danger to the community, Mr. Lam was released. After leading a law-abiding life for the last decade, this Court must, among other things, consider whether the law permits the Government to now re-detain Mr. Lam without a hearing before a neutral immigration judge, without a determination that there has been a change in circumstances regarding Mr. Lam being a flight risk or a danger to the community, and without the Government providing any information that Mr. Lam's deportation to Vietnam is reasonably foreseeable. The law does not support Mr. Lam's re-detention under these circumstances. Accordingly, the Court GRANTS Mr. Lam's request for a preliminary injunction.

**I.    BACKGROUND[1]**

Mr. Lam is a forty-nine-year-old man, who was born in Vietnam and has lived in the

---

[1] The factual background is drawn from Mr. Lam's complaint and TRO motion. ECF Nos. 1, 3.

United States for 45 years. His fiancée and son are U.S. citizens.

In 1980, when he was four years old, Mr. Lam's family fled from Vietnam and entered the U.S. as refugees. Over time, he became a lawful permanent resident. In 1994, at 18 years old, Mr. Lam was convicted of California Penal Code § 187 and served 21 years in California state prison. In November 2015, Mr. Lam was released on parole by the California Board of Parole Hearings and the Governor of California, after satisfying the required showing that he had been fully rehabilitated and that he did not pose a danger to, and is suitable to return to, the community.

After his release, Mr. Lam was detained by U.S. Immigration and Customs Enforcement ("ICE"). He went through removal proceedings before an immigration judge and was detained throughout the proceedings. "Though he expressed a fear of return to Vietnam, Mr. Lam attended only one hearing before an Immigration Judge at which he accepted a removal order." ECF No. 3 at 11.[2] The final order of removal, issued during the January 20, 2016 hearing, designated Vietnam as Mr. Lam's country of removal. *See* ECF No. 15-2 at 31. Neither Mr. Lam nor ICE designated a third country for his removal. At the time of his removal proceedings, and until recently, the U.S. and Vietnam were parties to an agreement providing that people who had entered the U.S. before July 12, 1995, could not be repatriated to Vietnam.[3] Mr. Lam understood that the agreement between the two countries applied to his circumstances, given that he entered the U.S. in 1980. "Because he could not be removed to Vietnam (the only country named in his removal order), and after several months it was clear that no party believed it was reasonably foreseeable that he ever would be so removed, and his ongoing detention would be unconstitutionally indefinite, Mr. Lam was released from ICE detention in approximately April 2016." *Id*.

The release notification subjects Mr. Lam to "certain written conditions" and instructs that

---

[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[3] Mr. Lam refers to the "Agreement Between the Government of The United States Of America and The Government Of The Socialist Republic Of Vietnam on the Acceptance of the Return of Vietnamese Citizens," entered into force on March 22, 2008 [https://www.state.gov/wp-content/uploads/2019/02/08-322-Vietnam-Repatriations.pdf].

2

"[i]t is particularly important that you keep ICE advised of your address at all times." ECF No. 15-2 at 34. Additionally, the release notification states that "ICE will continue to make efforts to obtain your travel document that will allow the United States government to carry out your removal." *Id.* It also indicates that "[o]nce a travel document is obtained, you will be required to surrender to ICE for removal." *Id.*

Mr. Lam was released from ICE detention on an Order of Supervision, which required him to attend regular check-in appointments with ICE. Mr. Lam has consistently complied with his requirements for nearly a decade. During that time, he has worked as a Reentry and Facilities Manager at the Asian Prisoner Support Committee. He serves as a youth mentor, and volunteers at local community organizations. Mr. Lam has also applied for a pardon of his state conviction.

On October 21, 2025, Mr. Lam attended a regular check-in appointment with ICE. During the appointment, Mr. Lam was instructed to return for another check-in appointment on November 21, 2025. Mr. Lam's counsel had been in contact with ICE, and ICE did not indicate whether it intended to detain Mr. Lam at the November appointment. Mr. Lam was worried that, "[i]n light of credible reports of ICE re-incarcerating individuals at their ICE check-ins and [Mr. Lam's] counsel's own experiences, it [was] highly likely that Mr. Lam [would] be arrested and detained at his . . . ICE check-in." ECF No. 3 at 14. Mr. Lam fears being re-detained, transferred outside of California, and removed from the U.S. to a third country without notice and or an opportunity to apply for fear-based relief.

On November 19, 2025, Mr. Lam initiated this case against Respondents-Defendants (the "Government") and filed a motion for a temporary restraining order ("TRO"), seeking relief before his November 21, 2025 check-in appointment with ICE. ECF Nos. 1, 3. The Government filed an opposition. ECF No. 6. On November 20, 2025, the Court granted the motion for a TRO and set a hearing date. ECF No. 11. The parties later stipulated to extend the TRO and postpone the hearing until December 17, 2025. ECF No. 13.

In its Order granting the motion for a TRO, the Court also ordered the Government "to provide evidence, specific as to Mr. Lam, that his removal to Vietnam is reasonably foreseeable." ECF No. 11 at 7. Specifically, the Court requested the Government provide materials

3

demonstrating:

- Any request by DHS of appropriate travel documents for Mr. Lam's removal to Vietnam;
- Any response by Vietnam regarding Mr. Lam's removal to Vietnam; and
- Any other information pursuant to the MOU and specific to Mr. Lam.

*Id.*

On December 5, 2025, the Government submitted only the following documents in response to the Court's Order:

- Mr. Lam's arrival-departure record, dated August 20, 1980;
- Mr. Lam's lawful permanent residence record, dated April 20, 1983;
- Mr. Lam's criminal conviction record, dated February 3, 1995;
- Mr. Lam's record of deportable/inadmissible non-citizen status, dated August 23, 2011;
- Mr. Lam's removal order, issued by an immigration judge, dated January 20, 2016; and
- Mr. Lam's release notification, dated April 13, 2016.

ECF No. 15-2. The Government did not provide any information or documentation that was responsive to the Court's November 20, 2025 Order.

The Court held a hearing on December 17, 2025, and granted Mr. Lam's request to convert the motion for a TRO into one for a preliminary injunction after confirming that the Government did not object. At the hearing, the Government did not submit additional documents or provide further information as to the reasonable foreseeability of Mr. Lam's removal to Vietnam. Counsel for Mr. Lam alerted the Court that he submitted completed travel documents to ICE at his November 21, 2025 check-in.

## II.     DISCUSSION

### A.     Relevant Statutory Scheme

Section 1231(b)(2) of the INA sets out the procedure by which the Secretary of Homeland Security determines the country of deportation for a noncitizen who has received a final removal

4

order.[4]  As the Supreme Court summarized, the Secretary of Homeland Security must follow "four consecutive removal commands" under § 1231(b)(2):

> (1) An alien shall be removed to the *country of his choice* (subparagraphs (A) to (C)), unless one of the conditions eliminating that command is satisfied;
>
> (2) otherwise he shall be removed to the *country of which he is a citizen* (subparagraph (D)), unless one of the conditions eliminating that command is satisfied;
>
> (3) otherwise he shall be removed to one of the *countries with which he has a lesser connection* (clauses (i) to (vi) of subparagraph (E)); or
>
> (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to "*another country whose government will accept the alien* into that country" (clause (vii) of subparagraph (E)).

*Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341-42 (2005) (emphasis and formatting added).

Starting with step one, a noncitizen shall be removed to the country of their choice and have an opportunity to designate a preferred country during final removal proceedings. § 1231(b)(2)(A).  If a noncitizen does not designate a preferred country, they will be removed to their country of citizenship under step two, or removed to a country with which they have a lesser connection under step three, unless they have been granted withholding of removal from that country.  § 1231(b)(2)(D).

If the first three steps are unavailable, the noncitizen will be removed to "another country whose government will accept the alien into that country." § 1231(b)(2)(E)(vii).  However, before being removed to "another country," the noncitizen "must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976) and *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998)).  "[L]ast minute orders of removal

---

[4] "Alien" is a term used in the INA, which was enacted in 1952; many cases that address immigration issues and the INA also use that word.  The term is now widely considered derogatory because it pejoratively denies and dismisses the humanity of people, including children.  As a result, current advocates and Government agencies often choose to use words such as immigrant or noncitizen instead.  Here, the Court uses "alien" only when quoting the statute or caselaw.  *See Arce v. United States*, 899 F.3d 796, 799 (9th Cir. 2018) ("Following the lead of the United States Supreme Court, we use the term 'noncitizen' throughout this opinion to refer to any person who is not a citizen or national of the United States." (cleaned up)).

to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 Fed. App'x 724 (9th Cir. 2016).

After a noncitizen receives a final removal order and there is no applicable judicial stay, the noncitizen may be detained pending removal pursuant to 8 U.S.C. § 1231(a). *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197-98 (9th Cir. 2022). Section 1231(a) states that the Secretary of Homeland Security "shall remove the alien from the United States within a period of 90 days." § 1231(a)(1)(A). During the 90-day removal period, noncitizens may be detained. § 1231(a)(2). Section 1231(a)(6) "authorizes further detention if the Government fails to remove the alien during those 90 days." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). This further detention statute is applicable to "certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'" *Id*. at 688. However, the Supreme Court has held that detention can only be for "a period reasonably necessary to secure removal." *Id*. at 699. Therefore, "if removal is not reasonably foreseeable," "continued detention [is] unreasonable and no longer authorized by statute." *Id*. at 699-700.

### B. Application of *Winter* Factors

Courts use the same standard for issuing a temporary restraining order as that for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017) ("[T]he legal standards applicable to TROs and preliminary injunctions are substantially identical." (internal quotation marks and citation omitted)). An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

interest." *Id*. at 20.  Courts may still issue a preliminary injunction if a "plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits," if the balance of equities "tips sharply in the plaintiff's favor" and the plaintiff establishes that they are likely to suffer irreparable harm and that an injunction is in the public interest. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).  Where, as here, the Government is a party, the last two *Winter* factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (questions of whether the balance of equities tips in plaintiffs favor and whether injunction is in the public interest merge when the government is a party).

Mr. Lam alleges: (1) that the Fifth Amendment Due Process Clause and the INA prevent his detention until his removal is "reasonably foreseeable"—i.e., after he receives notice and opportunity to contest his removal; and (2) that the Fifth Amendment Due Process Clause and the INA require the Government to provide meaningful notice and the opportunity to present a fear-based claim before removing him to a third country. *See* ECF No. 3.

### 1. Petitioner has Shown a Likelihood of Success on the Merits

#### a. Jurisdiction

First, the Government argues that the Court lacks jurisdiction because Mr. Lam "is not in physical custody and is not challenging whatever restraints ICE has currently imposed" and thus does not present a valid habeas claim.  ECF No. 6 at 4.  As Mr. Lam notes, however, he is subject to "a number of restrictions on his liberty, including the requirement that he report to ICE whenever instructed."  ECF No. 17 at 8.  Such requirements "impose[] conditions which significantly confine and restrain his freedom; this is enough to keep him in the 'custody' of [the DHS] within the meaning of the habeas corpus statute." *Id.* (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963)).

Moreover, in addition to his requests for habeas relief, Mr. Lam also pleads federal question jurisdiction. *See* ECF No. 1 at 9 (alleging that "[t]his Court has jurisdiction over the present action pursuant to 28 U.S.C. § 1331, general federal question jurisdiction").  A district court has authority "both to entertain . . . constitutional challenges and to grant injunctive relief"

7

where a plaintiff's "due process claims arise under the Constitution, and [a plaintiff] invoke[s] 28 U.S.C. § 1331, which provides subject matter jurisdiction irrespective of the accompanying habeas petition." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). Accordingly, the Court finds that Mr. Lam presents a valid habeas claim, and even if he did not, the Court maintains federal question jurisdiction over his claims.

### b.  Merits

Here, Mr. Lam has demonstrated that there are serious questions going to the merits of his claims under the Due Process Clause, including his claim that he may not be detained, without a pre-deprivation hearing before a neutral immigration judge, until his removal is "reasonably foreseeable." He has further established that he is likely to succeed on the merits. The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law. U.S. Const. amend. V. In particular, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "These protections 'appl[y] to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,' and to immigration detention as well as criminal detention." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) (citing *Zadvydas*, 533 U.S. at 693).

The Court must determine what procedural process is due under *Mathews v. Eldrige*. 424 U.S. 319 (1976) (the Court must balance three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."). Numerous courts in this District have found that, in substantially similar cases, plaintiffs have satisfied the *Mathews* test, and people in Mr. Lam's circumstances have a protectable liberty interest in remaining out of custody on bond pending further immigration proceedings. *See Ortega v. Kaiser, et al.*, No. 25-cv-05259-JST, 2025 WL 2243616, at *6 (N.D. Cal. Aug. 6, 2025)

1    (collecting cases); *Jorge Rivera Larios v. Sergio Albarran, et al.*, No. 25-cv-08799-AMO, 2025
2    WL 3043391, at *6 (N.D. Cal. Oct. 31, 2025).

3          This Court finds the reasoning in those cases to be persuasive and similarly concludes that
4    Mr. Lam has satisfied the three *Mathews* factors and has shown that those factors support a pre-
5    deprivation hearing before a neutral immigration judge.  First, Mr. Lam has a substantial private
6    interest in remaining out of custody on bond to provide for his family and to maintain his
7    employment.  Second, there is a high risk of erroneous deprivation of Mr. Lam's rights given that
8    the Government has not yet secured a travel document for Mr. Lam, despite the statements in Mr.
9    Lam's release notification that "ICE will continue to make efforts to obtain your travel document
10   that will allow the United States government to carry out your removal pursuant to your order of
11   deportation, exclusion, or removal."  ECF No. 15-2 at 34.  Further, a pre-deprivation hearing
12   before a neutral immigration judge would provide substantial safeguards to Mr. Lam while not
13   overly burdening the Government.  *See Singh v. Andrews*, No. 25-cv-00801-KES, 2025 WL
14   1918679, at *7 (E.D. Cal. July 11, 2025) (when "[a] petitioner has not received any bond or
15   custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high" because
16   neither the government nor the petitioner has had an opportunity to determine whether there is any
17   valid basis for the detention).  Third, the Government has a low level of interest in detaining Mr.
18   Lam until his removal is "reasonably foreseeable" without a pre-deprivation hearing before an
19   immigration judge because the *Government already determined in 2016* that Mr. Lam is not a
20   flight risk nor a danger to the community.  *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1035 (N.D. Cal.
21   2025) ("Civil immigration detention is permissible only to prevent flight or protect against danger
22   to the community.").  Further, the Government has made no effort to remove Mr. Lam to a third
23   country over the last ten years or to Vietnam, the country to which he has a final removal order,
24   over the last several years when — given the change in policy — it presumably was possible to do
25   so.

26         Finally, § 1231(a)(6), the applicable removal provision for Mr. Lam, authorizes detention
27   for only "a period reasonably necessary to secure removal."  *Zadvydas*, 533 U.S at 699.  "Thus, if
28   removal is not reasonably foreseeable . . . continued detention [is] unreasonable and no longer

authorized by statute." *Id.* at 699-700.  The Government can revoke that release, including "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  This is the provision at issue here.

The Government argues that while "political barriers to removing citizens of Vietnam" previously existed, the United States and Vietnam signed a Memorandum of Understanding ("MOU") to create a process for deporting Vietnamese immigrants who arrived in the United States prior to 1995.  ECF No. 6 at 5-6.  The Government then generally asserts that "[r]emoval to Vietnam is thus now readily accomplished."  *Id.* at 6.

The Government's arguments and general assertions about removal of individuals to Vietnam generally, as opposed to the specific, reasonably foreseeable removal of Mr. Lam based on his final order of removal, are unavailing.  The Government has not met its burden of demonstrating that Mr. Lam's removal to Vietnam is imminent, or if "on account of changed circumstances, . . . there is a significant likelihood that [Mr. Lam] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  Even after an opportunity to provide additional evidence, the Government did not submit documents specific to Mr. Lam that demonstrate his removal to Vietnam is reasonably foreseeable.  In fact, in its supplemental submission, the Government failed to show that DHS has even requested travel documents from Vietnam to effectuate Mr. Lam's removal.  During the hearing, which came weeks after the Court requested the supplemental information, the Government conceded it still had no documentation since the 2016 removal order regarding if, when, or to where Mr. Lam may be deported.  Nor did the Government provide any information pursuant to the Memorandum of Understanding ("MOU") signed by the United States and Vietnam in November 2020, that creates a process for deporting Vietnamese immigrants who arrived in the United States prior to 1995.  ECF No. 6 at 5-6.  Instead, the Government offers that it will "submit the travel document request packet to obtain a travel document for Petitioner to Vietnam" after Mr. Lam arrives at his next check-in with a completed travel document application.  *Id.* at 8.

Mr. Lam has also demonstrated that there are serious questions going to the merits of his

removal claim under the Due Process Clause and under the INA, and Mr. Lam has further established that he is likely to succeed on the merits.

"Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Najjar*, 630 F. App'x 724 (citing *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012)) (holding that a "last minute order[] of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.").

The INA requires that Mr. Lam be provided with "sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden*, 409 F. Supp. 3d at 1009. The record does not indicate that, other than Vietnam, there are other countries to which Mr. Lam "could currently be removed without his first being afforded notice and opportunity to be heard on a fear-based claim as to that country, as the Fifth Amendment Due Process Clause requires." *Ortega*, 2025 WL 2243616, at *5.

Thus, the Court finds that Mr. Lam has shown a likelihood of success on the merits of his claims that the Due Process Clause and the INA entitles him to a hearing before a neutral immigration judge prior to any detention, and to notice and an opportunity to present a fear-based claim before being removed to a third country.

### 2. Petitioner has Demonstrated that He is Likely to Suffer Irreparable Harm without Preliminary Relief

Mr. Lam is likely to suffer immediate and irreparable harm in the absence of preliminary injunctive relief because he faces the risk of re-detention by ICE without his deportation being "reasonably foreseeable" and the risk of removal to a third country without an opportunity to present a fear-based claim and, which would be in violation of his procedural due process rights. The Government makes no assurances that its intentions would not change, and that ICE would not re-detain Plaintiff soon or after his next check-in. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez*, 872 F.3d at 994 (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). Moreover, detention and

1  removal would impose severe emotional and financial burdens on Mr. Lam and his family, including his fiancée and son.

### 3. Balance of Equities Tips in Petitioner's Favor and an Injunction is in the Public Interest

The Court finds that the balance of equities tips in Mr. Lam's favor, and a preliminary injunction is in the public interest. The third and fourth *Winter* factors, balance of equities and public interest, merge given that the Government is a party. *Drakes Bay Oyster Co.*, 747 F.3d at 1092.

Here, the potential harm to Mr. Lam is significant, while the Government's potential harm is minimal. Mr. Lam faces the most serious harm – the loss of liberty. Detention not only deprives a person of physical freedom, but it isolates a person from family, community, and employment, often causing severe, enduring psychological trauma. The Government risks only a delay in detaining Mr. Lam. The Government confirmed, through the April 13, 2016 release notification, that they do not consider Mr. Lam to be a flight risk nor a danger to the community. ECF No. 15-2 at 34. In the context of immigration detention, "the government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions." *Hernandez*, 872 F.3d at 994. At the same time, there is a strong public interest in protecting individuals from unlawful detention. *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) (finding that all citizens have a stake in upholding the Constitution, and therefore public interest concerns are implicated when a constitutional right has been violated). "Faced with a choice 'between minimally costly procedures and preventable human suffering,' . . . the Court concludes 'that the balance of hardships tips decidedly in petitioner's favor.'" *Singh*, 2025 WL 1918679, at *9 (quoting *Hernandez*, 872 F.3d at 996) (simplified).

The balance of equities and public interest favors maintaining the status quo, enjoining the Government from detaining Mr. Lam without a pre-deprivation hearing before a neutral immigration judge and requiring the Government to provide Mr. Lam with notice and an opportunity to present a fear-based claim.

### 4. Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). The Court has "discretion as to the amount of security required, if any," and it "may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (citation modified). The Court finds that no security bond is required, as the Government provides no evidence of costs it will incur due to Lam's continued release. *Pinchi*, 792 F. Supp. 3d at 1036.

## III. CONCLUSION

For the reasons stated above, Mr. Lam's motion for a preliminary injunction is GRANTED to preserve the status quo. The Government is hereby ORDERED as follows:

1) Defendants, and all their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby ENJOINED and RESTRAINED from re-arresting and re-detaining Mr. Lam without a pre-deprivation hearing before a neutral immigration judge.

2) If the Government receives travel authorization from Vietnam that confirms it will permit the United States to deport Mr. Lam to Vietnam, the Government may file a motion in this action seeking to be relieved of the preliminary injunction. Any such motion shall attach the travel authorization for Mr. Lam, and the documentation from Vietnam confirming it will accept Mr. Lam into Vietnam once he is deported from the United States.

3) Defendants, and all their officers, agents, servants, employees, attorneys, successors, assigns, and persons acting in concert or participation with them are hereby ENJOINED and RESTRAINED from removing Mr. Lam to any third country without first providing him with constitutionally-compliant procedures, including notice and an opportunity to present a fear-based claim.

4) No security bond is required under Federal Rule of Civil Procedure 65(c).

13

5) This Order shall remain in effect until further order of the Court.

The parties shall immediately inform the Court, within three court days, if there are any changes to Mr. Lam's immigration status or upcoming immigration proceedings.

**IT IS SO ORDERED.**

Dated: December 23, 2025

Noël Wise
United States District Judge